Green, J.
(dissenting). I respectfully dissent from the majority’s conclusion that the evidence was sufficient to impose on Steven A. Ross liability for the actions of Bernard Laverty, Jr., regarding the side loan. As the majority acknowledges, the trial judge found (with support in the evidence) that Ross had no direct knowledge of the side loan, and indeed from all appearances it appears that Laverty took great pains to conceal from Ross any information regarding the side loan. To overcome that substantial barrier, the majority (and the trial judge) relies principally on two factors: (i) that the amount of the loan Laverty requested on Fergus’s behalf exceeded the amount required for the renovations Fergus planned, and (ii) that Laverty did not receive from Ross his customary referral fee incident to the loan Ross made to Fergus. In my view, neither factor, alone or in combination, is adequate to support the conclusion that, in transacting the side loan with Fergus, Laverty was acting within the scope of his authority as Ross’s agent with respect to the loan from Ross to Fergus. To the extent the trial judge “found” that Ross knew of the side loan (and it is not at all clear that she made any such finding),[1] it was without support in the evidence.
First, it is wholly unremarkable that Fergus borrowed more money than his planned renovations required. Owners of real property commonly borrow funds secured by the property, even when they have no plans to perform renovations of any kind. *537 Fergus was an investor in a variety of properties, and (for all Ross may have known) could have planned to use the additional monies to place a deposit toward purchase of another property, or to perform maintenance or repairs to another property — or even to purchase a new car or take an exotic vacation. The majority cites no authority (and I am aware of none) for the proposition that a lender has a duty to inquire into the purposes to which a borrower plans to direct loan proceeds, or that failure to do so will charge the lender with constructive notice that the borrower has entered into an otherwise undisclosed arrangement with the lender’s agent.[2]
Nor, in my view, does the fact that Laverty did not receive from Ross his customary referral fee carry any substantial weight with regard to the question of his authority to bind Ross to the side loan. Again, for all Ross knew, Laverty might have arranged for compensation by Fergus, as a finder’s fee, for the services La-verty performed in arranging the loan to Fergus from Ross.
To be sure, Fergus comes before the court in a highly sympathetic posture, having been the victim of a fraud perpetrated by Laverty against him. But the circumstances of the case do not place Laverty’s fraudulent conduct within the scope of his agency or authority on Ross’s behalf any more than if Laverty instead had persuaded Fergus (without Ross’s knowledge) to use $120,000 of the loan proceeds to purchase the Brooklyn Bridge, swamp land in Florida, or stock in an Argentinian silver mine. Had Fergus made any inquiry whatsoever of Ross about the side loan at the closing, directed either to the documentation of the loan or of the collateral he had been promised to secure it, the case would be entirely different. As things stand, however, the majority concludes that Ross may be held responsible for Laverty’s conduct toward Fergus in connection with the side loan, where the only common thread between the loan Ross agreed to extend to Fergus and the side loan Laverty persuaded Fergus to extend to him without Ross’s knowledge was that the proceeds of the loan from Ross to Fergus served as the source of the funds Fergus lent to Laverty.

 The trial judge observed that “Ross’ actual knowledge of the [side] loan may not be directly proven,” and found specifically that at the closing, the side loan to Laverty was not discussed by Ross or in Ross’s presence. The closest the trial judge came to finding that Ross actually knew of the side loan is her comment that “I believe [Ross] may well have known that Laverty was borrowing funds from Fergus.” Expressed in that fashion, it is less a finding that Ross knew of the loan than speculation regarding the possibility that he may have known of it. Later, the trial judge observed that “Ross could easily have deduced that Fergus was lending money to Laverty out of the proceeds of the loan.” For the reasons that follow, to the extent the judge’s comment amounts to a finding that a reasonable person in Ross’s position, possessed of the information available to him, knew or should have known that Laverty had arranged for Fergus to lend money to him from the proceeds of the loan Ross made to Fergus, I believe it rests on speculation rather than evidence and, accordingly, is clearly erroneous.

 Of course, a prudent lender might wish for its own benefit to obtain some explanation of the purpose for which a borrower is borrowing funds. That interest does not equate, however, into a conclusion that an unexplained request for funds, supported by the value of the collateral, is suggestive of an independent financial arrangement between the borrower and the lender’s agent.